UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


MICHAEL MANNING,                  :     **CIVIL NO.  1:07-CV-0740**
                                  :
            Plaintiff             :     (Judge Caldwell)
                                  :
       v.                         :     (Magistrate Judge Smyser)
                                  :
MICHAEL J. ASTRUE[1],             :
Commissioner of                   :
Social Security,                  :
                                  :
            Defendant             :


**REPORT AND RECOMMENDATION**


     The plaintiff has brought this civil action under the

authority of 42 U.S.C. § 405(g) to obtain judicial review of

the decision of the Commissioner of Social Security denying the

claim of the plaintiff for Social Security disability insurance

benefits.


     On September 17, 2004, the plaintiff, Michael Manning,

applied for disability insurance benefits.  He claimed that he

---

1.  Michael J. Astrue became the Commissioner of Social Security, effective
February 12, 2007, to succeed Linda S. McMahon. Under Fed. R. Civ. P. 25(d)(1)
and 42 U.S.C. 405(g), Michael J. Astrue is automatically substituted as the
defendant in this action.

became disabled on April 9, 1996, as the result of a lower back and neck injury secondary to a work place injury.  The claim was denied initially and on reconsideration.  The plaintiff filed a request for a hearing, and a hearing was held before an administrative law judge (ALJ) on July 19, 2006.

At this hearing the plaintiff and a vocational witness testified.  The plaintiff stated in his testimony (Tr. 400-418) that his is thirty-six years old, single and lives with his parents and sister.  He stays on the first floor.  He drives occasionally.  He completed high school, and can read and write.  He last worked in 1996, when he suffered an injury when he was run over by a forklift.  He received Worker's Compensation, but he no longer receives it.

He experiences severe pain and has a limited range of motion.  He uses a cane, and has used one since 1996.  He uses the cane because his legs develop pain and get weak, causing a collapse.  He was bed-ridden for a six or seven month period in 2005 and 2006.

He stated that he can not stand in one place for long. He can not stand straight.  He is not able to bend.  He is sometimes uncomfortable sitting.  He is advised by a doctor not to lift more than five pounds.  He has a problem with lifting overhead.

His doctor, Dr. Gupta, gives him physical therapy. Surgery has been recommended to him.  He plans to have surgery, but not until his is older (over 40) because doctors have told him that it would be better for him to hold off.

His family members help him to take a shower and to get dressed and with other items of his personal care.  He has few hobbies; primarily, he reads.  His days are depressing because he does not have activities.

He also has chronic asthma, which has required hospitalization.

In 2003 he was in an auto accident.  A nerve in his neck was damaged.  His arm and hand are affected.

3

He experiences seizures and severe migraine headaches with blurred vision and nausea two to three times a week.

He stated that his symptoms became much worse after his auto accident in 2003.  The accident caused him to have problems with his left arm and aggravated his lower back problems.

He does not smoke or drink.

A conviction in 1998 caused him to be sentenced to a long prison term; however, his conviction was vacated by the Superior Court in 2002 and he was released.  In prison, he was not permitted to work.  He was initially approved for sedentary work, but then the prison doctor reversed that after reviewing his background and his condition.

He takes pain relief medication.  He experiences wrist pain every day.  He has uncontrolled bowel problems.  He has sleeping problems.  He is lying down about 95% of the day.  His

pain and medications make it difficult for him to concentrate on anything.

The vocational witness (Tr. 418-421) testified that the plaintiff is a younger person whose past unskilled jobs were light to medium.  Assuming a person with the plaintiff's age, education and background, able to do sedentary work, the person could not do the plaintiff's past relevant work but could perform sedentary jobs.  If the person had to miss work more than two days a month on a consistent basis, the person would not be employable.

On August 7, 2006 the ALJ issued her decision denying the plaintiff benefits.  (Tr. 11-19).  The Appeals Council denied the plaintiff's request for review (Tr. 4-6), making the ALJ's decision the final decision of the Commissioner.

The plaintiff filed his complaint with this court on April 20, 2007.  The defendant filed an answer to the complaint and a copy of the administrative record on June 19, 2007. Pursuant to Local Rules 83.40.4 and 83.40.5, the plaintiff

filed his brief on August 6, 2007 and the defendant filed his
brief on October 11, 2007.  No reply brief has been filed.

If the Commissioner's decision is supported by
substantial evidence it must be affirmed. 42 U.S.C. § 405(g).
Substantial evidence means "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.
1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.
1995).  Substantial evidence is more than a mere scintilla of
evidence but less than a preponderance.  *Brown v. Bowen*, 845
F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence
if the Commissioner ignores countervailing evidence or fails to
resolve a conflict created by the evidence.  *Mason v. Shalala*,
994 F.2d 1058, 1064 (3d Cir. 1993).  However, in an adequately
developed factual record, substantial evidence may be
"something less than the weight of the evidence, and the
possibility of drawing two inconsistent conclusions from the
evidence does not prevent [the decision] from being supported

6

by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id*. at 706-707. In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4)

whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he is unable to engage in his past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

In this case the ALJ determined that the plaintiff has not engaged in substantial gainful activity since the alleged onset date of April 9, 1996, that he has impairments that are severe, lumbar and cervical disc disease with radiculopathy and post-tramatic headaches, and that his impairments do not meet or equal any listed impairments. The ALJ further determined that beginning on June 6, 2003 the plaintiff was unable to

8

sustain any gainful activity on a regular basis.  Since the

plaintiff's alleged onset date the plaintiff has been unable to

perform his past relevant work.   But, the ALJ decided, prior

to June 6, 2003 the plaintiff had the residual functional

capacity to perform jobs identified by the vocational witness.

     On the basis of these findings, the ALJ found the

plaintiff not to be disabled prior to June 6, 2003, thereby

finding the plaintiff not to qualify for benefits in that the

date last insured was December 31, 2000.

     The plaintiff argues that the ALJ erred in not finding

the plaintiff's impairments to have equaled or to have met the

Listing 1.04 impairment criteria prior to December 31, 2000.

He argues that the ALJ erred in determining the plaintiff to

have had a functional capacity for a range of sedentary work

prior to that date.

     In considering the Transcript, the briefs and the ALJ's

decision, we note first that the questioning of the plaintiff

at the July 19, 2006 hearing did not adequately cover the range

of significant questions arising from two important events that had occurred between the plaintiff's claimed onset-of-disability date (which was in April of 1996, when he was run over by a forklift while working) and the date of his hearing in July of 2006.

One of these was the plaintiff's incarceration for about four years from 1998 to 2002.  The other was his automobile accident in 2003.

The period of incarceration is important for various reasons.  He was not eligible to receive disability benefits while incarcerated.  42 U.S.C.A. § 402(x) provides:

(1)(A) Notwithstanding any other provision of this subchapter, no monthly benefits shall be paid under this section or under section 423 of this title to any individual for any month ending with or during or beginning with or during a period of more than 30 days throughout all of which such individual--

    (i) is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense,

    (ii) is confined by court order in an institution at public expense in connection with–

10

(I) a verdict or finding that the individual is guilty but insane, with respect to a criminal offense,

(II) a verdict or finding that the individual is not guilty of such an offense by reason of insanity,

(III) a finding that such individual is incompetent to stand trial under an allegation of such an offense, or

(IV) a similar verdict or finding with respect to such an offense based on similar factors (such as a mental disease, a mental defect, or mental incompetence),

(iii) immediately upon completion of confinement as described in clause (i) pursuant to conviction of a criminal offense an element of which is sexual activity, is confined by court order in an institution at public expense pursuant to a finding that the individual is a sexually dangerous person or a sexual predator or a similar finding,

(iv) is fleeing to avoid prosecution, or custody or confinement after conviction, under the laws of the place from which the person flees, for a crime, or an attempt to commit a crime, which is a felony under the laws of the place from which the person flees, or, in jurisdictions that do not define crimes as felonies, is punishable by death or imprisonment for a term exceeding 1 year regardless of the actual sentence imposed, or

(v) is violating a condition of probation or parole imposed under Federal or State law.

(B)(i) For purposes of clause (i) of subparagraph (A), an individual shall not be considered confined in an institution comprising a jail, prison, or other penal institution or correctional facility during any month throughout which such individual is residing outside such institution at no expense

11

(other than the cost of monitoring) to such institution or the penal system or to any agency to which the penal system has transferred jurisdiction over the individual.

> (ii) For purposes of clause (ii) and (iii) of subparagraph (A), an individual confined in an institution as described in such clause (ii) shall be treated as remaining so confined until--
>
>> (I) he or she is released from the care and supervision of such institution, and
>>
>> (II) such institution ceases to meet the individual's basic living needs.
>
> (iii) Notwithstanding subparagraph (A), the Commissioner shall, for good cause shown, pay the individual benefits that have been withheld or would otherwise be withheld pursuant to clause (iv) or (v) of subparagraph (A) if the Commissioner determines that--
>
>> (I) a court of competent jurisdiction has found the individual not guilty of the criminal offense, dismissed the charges relating to the criminal offense, vacated the warrant for arrest of the individual for the criminal offense, or issued any similar exonerating order (or taken similar exonerating action), or
>>
>> (II) the individual was erroneously implicated in connection with the criminal offense by reason of identity fraud.
>
> (iv) Notwithstanding subparagraph (A), the Commissioner may, for good cause shown based on mitigating circumstances, pay the individual benefits that have been withheld or would otherwise be withheld pursuant to clause (iv) or (v) of subparagraph (A) if the Commissioner determines that--

(I) the offense described in clause (iv) or underlying the imposition of the probation or parole described in clause (v) was nonviolent and not drug-related, and

(II) in the case of an individual from whom benefits have been withheld or otherwise would be withheld pursuant to subparagraph (A)(v), the action that resulted in the violation of a condition of probation or parole was nonviolent and not drug-related.

(2) Benefits which would be payable to any individual (other than a confined individual to whom benefits are not payable by reason of paragraph (1)) under this subchapter on the basis of the wages and self-employment income of such a confined individual but for the provisions of paragraph (1), shall be payable as though such confined individual were receiving such benefits under this section or section 423 of this title.

(3)(A) Notwithstanding the provisions of section 552a of Title 5 or any other provision of Federal or State law, any agency of the United States Government or of any State (or political subdivision thereof) shall make available to the Commissioner of Social Security, upon written request, the name and social security account number of any individual who is confined as described in paragraph (1) if the confinement is under the jurisdiction of such agency and the Commissioner of Social Security requires such information to carry out the provisions of this section.

(B)(i) The Commissioner shall enter into an agreement under this subparagraph with any interested State or local institution comprising a jail, prison, penal institution, or correctional facility, or comprising any other institution a purpose of which is to confine individuals as described in paragraph (1)(A)(ii). Under such agreement--

(I) the institution shall provide to the Commissioner, on a monthly basis and in a manner

13

specified by the Commissioner, the names, Social
Security account numbers, dates of birth,
confinement commencement dates, and, to the extent
available to the institution, such other identifying
information concerning the individuals confined in
the institution as the Commissioner may require for
the purpose of carrying out paragraph (1) and other
provisions of this subchapter; and

(II) the Commissioner shall pay to the institution,
with respect to information described in subclause
(I) concerning each individual who is confined
therein as described in paragraph (1)(A), who
receives a benefit under this subchapter for the
month preceding the first month of such confinement,
and whose benefit under this subchapter is
determined by the Commissioner to be not payable by
reason of confinement based on the information
provided by the institution, $400 (subject to
reduction under clause (ii)) if the institution
furnishes the information to the Commissioner within
30 days after the date such individual's confinement
in such institution begins, or $200 (subject to
reduction under clause (ii)) if the institution
furnishes the information after 30 days after such
date but within 90 days after such date.

> (ii) The dollar amounts specified in clause
> (i)(II) shall be reduced by 50 percent if the
> Commissioner is also required to make a payment
> to the institution with respect to the same
> individual under an agreement entered into
> under section 1382(e)(1)(I) of this title.

> (iii) There are authorized to be transferred
> from the Federal Old-Age and Survivors
> Insurance Trust Fund and the Federal Disability
> Insurance Trust Fund, as appropriate, such sums
> as may be necessary to enable the Commissioner
> to make payments to institutions required by
> clause (i)(II).

14

>        (iv) The Commissioner shall maintain, and shall
>        provide on a reimbursable basis, information
>        obtained pursuant to agreements entered into
>        under this paragraph to any agency
>        administering a Federal or federally-assisted
>        cash, food, or medical assistance program for
>        eligibility and other administrative purposes
>        under such program.
>
> (C) Notwithstanding the provisions of section 552a of Title 5
> or any other provision of Federal or State law (other than
> section 6103 of Title 26 and section 1306(c) of this title),
> the Commissioner shall furnish any Federal, State, or local
> law enforcement officer, upon the written request of the
> officer, with the current address, Social Security Number, and
> photograph (if applicable) of any beneficiary under this
> subchapter, if the officer furnishes the Commissioner with the
> name of the beneficiary, and other identifying information as
> reasonably required by the Commissioner to establish the
> unique identity of the beneficiary, and notifies the
> Commissioner that--
>
>        (i) the beneficiary is described in clause (iv) or (v) of
>        paragraph (1)(A); and
>
>        (ii) the location or apprehension of the beneficiary is
>        within the officer's official duties.

The period of incarceration was important in the plaintiff's

case because the plaintiff may have failed to file an

application for disability benefits during this time because he

was incarcerated and stood to be incarcerated for many years.

He might well have lacked a basis to file, given his

ineligibility.  He may be entitled to an equitable tolling of

the eligibility deadline on that basis.  He claims that he was

unable to perform substantial gainful activity during that

period.  His conviction was ultimately vacated, upon an appeal,

resulting in his release from a term of confinement that but

for his successful appeal would have caused him to be

ineligible for benefits for ten or more years.  The extremely

brief questioning of the plaintiff concerning his incarceration

elicited his statements that it was a wrongful conviction[2], and

that he had special accommodations while incarcerated, that he

did not perform work while incarcerated because of his

disability. (Tr. 411).  The fact of an exonerating order of the

Superior Court should have been considered in the context of 42

U.S.C. § 402(x)(1)(A)(iii).


    The June 6, 2003 accident was material in the decision, but

was not a subject of significant focus in the hearing.  The ALJ

in questioning a vocational witness presented all questions in

the present tense, none addressing the person who the ALJ later

found the plaintiff to have been in terms of functional

---

2.  His conviction was vacated by the Pennsylvania Superior Court on the basis
that he had been ineffectively counseled and represented in his trial and
appeal.  *Commonwealth v. Manning,* 813 A.2d 905 (Pa. Super. Ct. 2002).

capacity prior to June of 2003.  (Tr. 418-421).  The vocational

witness provided vocational evidence concerning a hypothetical

person possessing residual functional capacity characteristics

that the ALJ subsequently found the plaintiff to have possessed

prior to June 6, 2003.  The ALJ did not find that the plaintiff

before June 6, 2003 could perform his past relevant work;

accordingly, the burden was upon the Commissioner to show a

residual functional capacity for substantial gainful activity

during that period if the claimant was to be found not to be

disabled during that period.  The ALJ, not having questioned

the plaintiff to any significant extent about his condition

prior to June of 2003, and not having noted for the benefit of

the plaintiff and counsel that June of 2003 might be seen as a

dividing line as to the plaintiff's condition and as to the

plaintiff's credibility, found the plaintiff not to be

adequately credible as to matters before then and to be

adequately credible as to matters after then.  The plaintiff

did state that the 2003 accident was the cause of the greater

left arm limitations (Tr. 408) and aggravated his back problems

and that his condition was much worse after the accident. (Tr.

410).  The distinction as to pre-accident credibility and post-

accident credibility, and the decision based upon that
distinction, is not supported by substantial evidence.  The ALJ
made far more of the plaintiff's statement that his condition
was much worse after the accident than the statement supported.
Furthermore, the plaintiff has a right to be heard in greater
depth and breadth about his condition prior to June of 2003 if
the June of 2003 date is considered to be the material factor,
particularly so when the factor of the term of imprisonment is
considered.

   The ALJ bases some findings about the plaintiff's condition
before June of 2003 upon prison records.  The ALJ rejects the
plaintiff's testimony that the prison records do not fully
reflect what actually occurred as to his working and ability to
work while in prison.  The plaintiff stated that the prison
doctor reversed an earlier determination that the plaintiff
could do sedentary work and determined that he could not work.
The ALJ accepts the prison record and rejects the plaintiff's
recollection, although the prison record as explained is not at
odds with the plaintiff's recollection.  The ALJ appears to
accept the prison document without any consideration of the

plaintiff's testimony and without further analysis.  An explanation is called for; absent one, the *Cotter v. Harris* description of the ALJ's explanatory burden is not met.

The plaintiff responded "yes" to the question whether his condition got much worse after the motor vehicle accident in June of 2003.

The ALJ did not then develop a record comparing and contrasting aspects of the plaintiff's conditions before and after the accident, or even ask the plaintiff why he considered himself unable to work prior to the accident except to try to establish that he worked in prison, which he said he did not.

The plaintiff argues that there is not substantial evidence to support the ALJ's finding that the plaintiff, prior to June of 2003, did not have an impairment or combination of impairments that met or equaled Listing 1.04 *Disorders of the Spine.*  The defendant argues that the Listing is not met because there was not evidence of all of the Listing 1.04A criteria: a neuro-anatomic distribution of pain, a limitation

19

of motion of the spine, a motor less (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and positive straight leg raising test.

The ALJ's Listing 1.04 finding, which is stated only in the present tense, is: "The undersigned considered Listing 1.04. The claimant does not have the required neurological deficits as described in the listing." (Tr. 15).

The ALJ's declination to state adequately specific findings and analysis at this important step is not in compliance with *Burnett v. Commissioner,* 220 F.3d 112, 119-120 (3d Cir. 2000) and *Cotter v. Harris.*  Therefore, the case should be remanded, since although the Step Three analysis may be moot for purposes of the post June 2003 time period, it is not moot for the pre-June 2003 time period.

For the foregoing reason, it is recommended that the case be remanded to the Commissioner for further evidence taking and further consideration focusing upon the pre-June 2003 time period.


                                        ***/s/ J. Andrew Smyser***
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated:  November 5, 2007.